STATE of Minnesota, Respondent,

v.

Stanley HANSON, Appellant.

No. C1–85–1130.

Court of Appeals of Minnesota.

March 4, 1986.

Review Denied April 11, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Peter Kasal, McLeod Co. Atty., Glencoe, for respondent.

C. Paul Jones, Minn. State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Appellant Stanley Hanson was convicted of first-degree intrafamilial sexual abuse following a jury trial and was sentenced to a 43-month prison term. He appeals on the grounds that (1) the evidence introduced at trial was insufficient to sustain the verdict, and (2) he was denied a fair trial because the prosecutor cross-examined him about a *Spreigl* incident that the court previously ruled inadmissible. We affirm.

## FACTS

Appellant was convicted of committing various sexual acts with his then ten-year-old daughter, T.H. Appellant and JoAnn Hanson were married in 1972 and divorced in January 1978, when T.H. was five years old. T.H. was the only child born of that marriage. After the divorce, JoAnn Hanson had custody of T.H. Beginning in January 1980 appellant had regular visitation rights every third weekend. JoAnn Hanson married Daniel Gueningsman in October 1979. She had two children with her second husband.

T.H. and her stepfather got along well for the first years of the marriage, but their relationship began to deteriorate in early 1982. The Gueningsmans could not control T.H., so they took her to the Harley Clinic, a psychological counseling clinic in Glencoe, and also contacted her counselors at school. Neither of these approaches worked, and T.H.'s relationship with her mother and stepfather got worse. The Gueningsmans began to use physical force to try to control her.

T.H. reported physical abuse to school officials, and on November 10, 1983, she was taken out of her home and placed in a foster home. She continued to exhibit behavioral and emotional problems and was sent to the Hutchinson Mental Health Center in December 1983. During the time T.H. was assigned to foster care, appellant initiated a court action to try to obtain custody of his daughter.

While T.H. was at the Hutchinson Mental Health Center, she was examined regularly by Dr. Michael Smith, a psychologist working at the Center. Dr. Smith testified that T.H. was very difficult to work with and was prone to extreme rages. Dr. Smith testified that he suspected sexual abuse. On or about January 12, 1984, T.H. was moved to Bush Children's Center in St. Paul, a residential treatment facility for children with emotional and behavioral problems. At the time of T.H.'s transfer to Bush, Dr. Smith sent a referral letter to Judy Gusack, treatment coordinator at Bush, suggesting that T.H. may have been sexually abused.

A few weeks after T.H. arrived at Bush, the staff showed a movie videotape about sexual abuse, "Something About Amelia," to a group of children at the center who were old enough to understand the issues involved. Michelle O'Brien, a child care counselor at Bush, held a group discussion after the film and observed that T.H. reacted angrily to the film and the discussion.

T.H. appeared upset and expressed anger at the staff for making her watch the movie. T.H. stated that appellant had touched her in a way she didn't like. She gave as an example an incident in which appellant pulled her onto his lap and touched her where she didn't want to be touched. She tried to pull away, but appellant just pulled her back. He put his hand in her pants and rubbed her private parts. T.H. told O'Brien this really scared her, but she was afraid to tell her mother about the incidents because she was afraid appellant would hurt her mother.

As a result of T.H.'s revelation to O'Brien, Gusack reported what T.H. had said to a McLeod County social worker and made a report of sexual abuse.

On February 22, 1984, T.H. revealed more of the details about her abuse to Lisa Baum, Bush program director. Baum testified that T.H. had a great deal of difficulty expressing herself and that most of the information about specific allegations was gathered through the use of drawings. Baum testified that T.H. said appellant had put his penis in T.H.'s mouth, touched her vagina with his mouth and penis, and that he had ejaculated into her mouth.

After McLeod County began a criminal investigation, investigator Linda Shamla interviewed T.H. on two occasions. On May 16, 1984, T.H. described for Shamla the last incident of sexual abuse she experienced, which occurred in appellant's Lester Prairie home. T.H. had been watching television. Appellant would not leave her alone, approaching her several times. T.H. told Shamla that appellant put his penis be-

tween her legs and later forced her to put her mouth on his penis.

The parties stipulated that T.H.'s testimony could be presented at trial by means of a videotaped deposition, taped in the presence of Jean Conkel (T.H.'s guardian ad litem), Baum, appellant, counsel, and the court. T.H. refused to talk about the movie, "Something About Amelia;" however, she said that she and O'Brien looked at the book, "All About Me."

T.H. testified that when she was with Baum, she wrote on a picture of a little girl that appellant "touched my vagina with his hands, mouth, and peter or penis." In response to the question, "Did your dad ever touch you there (in a private place)?" T.H. said, "Yes." T.H. testified in response to cross-examination that she knew the difference between truth and falsehood and would not lie about the sexual abuse perpetrated by her father.

Appellant testified at trial on his own behalf, denying engaging in any sexual conduct with T.H., touching her private parts, or having her touch his private parts. He also denied having any disciplinary problems with T.H. during her weekend visitation with him. During the time T.H. was in the Hutchinson Hospital, appellant was attempting to gain custody of her. Appellant testified that he believed his ex-wife put T.H. up to making the allegations as a way to retain custody of her.

### ISSUES

1. Is the evidence sufficient to sustain the jury's verdict?

2. Was appellant denied a fair trial because the prosecutor alluded to *Spreigl* evidence that the court had ruled inadmissible?

### DISCUSSION

#### I

In *State v. Heinzer*, 347 N.W.2d 535 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. July 26, 1984), this court summarized the standard of review to be applied when the sufficiency of the evidence is at issue:

> Although the testimony of the defendant and the complainant differed sharply, the jury is entitled to believe complainant's account of the events. *State v. Hamilton*, 289 N.W.2d 470 (Minn.1979). On review
>
> > we will construe the record most favorably to the State and will assume the evidence supporting the conviction was believed and the contrary evidence disbelieved. (citations omitted). This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury.
>
> *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). Additionally, corroboration of the testimony of a complainant in sex crime offenses is not required. Minn. Stat. § 609.347, subd. 1 (1982).

*Id.* at 537–38.

After a thorough review of the trial record, we hold that the jury's verdict was supported by the evidence. The evidence indicates that T.H.'s initial disclosure of sexual abuse to child care counselor O'Brien was a spontaneous reaction to the movie and the workbook on sexual abuse. T.H. had difficulty telling her story, but her words and the pictures she drew were fundamentally consistent every time she was interviewed. She testified at trial that she understood the consequences of her allegations and that they were true. The uncontradicted testimony of the experts on interfamilial sexual abuse was that T.H. displayed the symptoms and behavior of a sexually abused child.

#### II

Pursuant to a *Spreigl* notice, the State argued during a chambers conference that a juvenile girl by the name of Rhonda K. should be allowed to testify concerning an alleged sexual relationship between her and appellant. The prosecutor made an offer of proof that he had evidence that appellant and the 13-year-old girl engaged

in hugging and French kissing. The prosecutor acknowledged that the girl denied any other sexual activity with appellant.

The trial court ruled that the evidence was inadmissible because the prejudicial effect outweighed the probative value. The prosecutor requested the court's permission to cross-examine appellant concerning the alleged incident. The text of the trial court's ruling is as follows:

THE COURT: The matter has been fully argued before the Court and the Court says and the Court has ruled, Number 1, the witness Rhonda will not be allowed to be called in the case in chief. And the issue comes up as to whether or not when the defendant takes the stand the prosecutor will be allowed to inquire into what, if any, contact the defendant had with, first of all, young girls and whether he's attracted to the, et cetera, et cetera, and secondly, whether or not he would be allowed to ask the question of whether or not he had ever dated a 13-year-old girl named Rhonda, et cetera, et cetera, or questions of like import. And the Court is ruling, Number 1, that the prosecution may ask the defendant on cross-examination whether or not he was sexually attracted or physically attracted to his daughter [T.H.] and whether or not he was physically or sexually attracted to young girls 13 years of age or thereabout and that's the extent of it.

* * * It's my feeling that we get on cross-examination questions about whether or not he dated or went out with or bought clothes for her, or any of that stuff, Rhonda, would be in effect bringing in the back door what I didn't allow to come in the front door.

During cross-examination of appellant, the prosecutor established that appellant knew and visited with a family that had a 13-year-old girl named Rhonda. He then asked whether appellant was sexually attracted to young women and whether anything about 12 or 13-year-old girls like T.H. sexually excited him. This line of questioning was allowed over defense objections.

Appellant denied any such attraction. On recross-examination the prosecutor again specifically mentioned the 13-year-old girl by name. The defense objection was sustained at that point.

Appellant argues that under the trial court's prior order it was misconduct for the prosecution to bring in any evidence which related specifically to Rhonda K. The prosecution argues that it was precluded only from asking questions about the *specifics* of appellant's interactions with Rhonda K. In a memo attached to its order denying appellant's post-trial motions, the trial court stated that the prosecution's cross-examination did not violate its prior order:

Prior to questions being put by the prosecutor to the defendant on cross-examination, the Court in chambers strictly limited the extent to which the defendant could be questioned about the minor, Rhonda K. and his connection if any with her. In the Courts judgment the prosecutor stayed within the parameters set down and no prejudice resulted to the defendant. In view of the age of the complaining witness (12) the question on cross-examination concerning whether or not the defendant felt an attraction to 12 to 15 year old girls certainly had relevance.

■ Prosecutors in sexual abuse cases may not deliberately persist in trying to inject into trial matters which they cannot introduce directly; they must abide by the highest behavior. *State v. Jahnke*, 353 N.W.2d 606 (Minn.Ct.App.1984). By returning to questions about Rhonda K. on recross-examination, the prosecutor here came close to violating this high standard. Nevertheless, the trial court's construction of its own order carries considerable weight. We find that the trial court's ruling that the prosecutor stayed within the parameters of the pretrial order was not clearly erroneous.

■ Furthermore, we find that the prosecutor's conduct did not result in any substantial prejudice to appellant. The questioning established that appellant knew a

family that had a 13-year-old girl, but never touched on any specific interaction involving Rhonda K. This reference was so oblique that it is not likely that it played a substantial part in influencing the jury to convict. *See State v. Caron,* 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

## DECISION

The trial court did not err in denying appellant's motion for acquittal and, in the alternative, for a new trial. The jury's verdict was supported by the evidence. The prosecutor's allusion to *Spreigl* evidence that had been ruled inadmissible did not deny appellant a fair trial.

Affirmed.