James Curtis POWE, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C5–86–41.

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied July 31, 1986.

C. Paul Jones, Public Defender, Michael Cromett, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Mark S. Rubin, Asst. Co. Atty., Duluth, for respondent.

Considered and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant James Curtis Powe was convicted of criminal sexual conduct in the first and third degree in violation of Minn. Stat. § 609.342(e)(i) (1984) and Minn.Stat. § 609.344(b) (1984). Appellant claims: (1) the evidence was insufficient to convict him of the offenses; (2) he was deprived of his right of confrontation and a fair trial by the exclusion of evidence regarding the complainant's sexual experience and the way she acted and projected herself in the community; (3) he was deprived of a fair trial by (a) admission of *Spreigl* evidence of a sexual assault against his ex-wife; (b) the prosecutor's comments during final argument; (c) errors at trial, erroneous jury instructions, and ineffective assistance of counsel; and (4) he is entitled to a downward departure from the presumptive sentence. We affirm.

## FACTS

On the evening of January 13, 1984, S.G. told her mother she had been raped by three or four black men in an alley or parking lot in Duluth. S.G. was then taken to the police station where she repeated the statement and explained that a girl named Marcie had initially been with her, but ran away when accosted by the men. S.G. provided a vague description of three men.

The police took S.G. to the alleged scene of the assault to gather evidence. They were unable to find any evidence consistent with her story. After further questioning, S.G. admitted she in part lied. She instead stated she had been raped by a single black man named "Skeeter" or "Scooter" in his apartment.

At trial, S.G. testified she voluntarily went to appellant's apartment to deliver a message to one of the occupants for a girlfriend. She stated she was let in by Joseph Sellers, who was leaving. She began watching television and was joined by Earnest Tucker, Stanley Cox, and appellant. Cox and Tucker left the room and she and appellant were left alone. They talked a couple minutes while watching television and listening to the radio.

S.G. then decided to leave the apartment and told appellant of her intentions. She got up and headed toward the door. Simultaneously, appellant got up, went through the dining room, and met her as she approached the door. S.G. stated she tried to walk past him, but he pushed her into his bedroom, closed the door and blocked her

exit. He then tried to take off her clothes, unsuccessfully at first, but then managed to pull her pants down and forcibly had sexual intercourse. S.G. stated she tried to push him away, but was unable to do so and broke a thumbnail. Appellant told S.G. not to do anything and to shut up when she tried to call out.

On the evening of the assault, S.G. was taken to the hospital and given a sexual assault examination. The exam revealed redness and irritation in the vaginal area, which indicated recent intercourse. At the exam, S.G. also stated she hurt in the vaginal and lower stomach area.

At trial, S.G. testified she lied to her mother and the police about Marcie and the circumstances surrounding the assault because her parents hate black people and do not like her going anywhere alone, and she was afraid to tell them she had voluntarily gone to the apartment.

Appellant testified that at 7:00 p.m. on January 13, someone knocked on the door. One of his roommates answered the door. Appellant was surprised to see S.G. He recognized her as the same person he had first seen at the AFA Community Center earlier that month when he and a roommate were playing basketball.

Appellant testified he and S.G. were left alone in the living room. Appellant claimed S.G. came over to the couch and sat on his lap and "came on to him" and asked which bedroom was his, a question appellant took to mean she wanted to have sex. Appellant admitted he had sexual relations with S.G., but stated he did not force himself on her; rather it was she who initiated the act and consented.

After S.G. left, appellant went to a bar and did not return home until 1:00 a.m. When he arrived, he found two plain clothes officers talking with his roommates. Appellant testified that Officer Lyons informed him someone claimed to have been raped by three or four black men in an alley and that his roommates told the police he committed the offense. Appellant stated he did not know what they were talking about because he had been

out all night and had not been involved in any rape and that his roommates must be lying to cover up for themselves. Lyons again told appellant that the police were informed it was he who committed the sexual assault against a 15-year-old. Appellant replied he knew no young girl and it was some young girl's word against his.

Appellant testified that, when he learned the girl was S.G., he became scared and panicked and lied to the police about being out all night, being at his sister's house from 6:30 p.m. until 8:30 p.m., and at the Club Saratoga after that.

Appellant claimed he believed S.G. was at least 16 years old because: (1) he heard her say, at the AFA Community Center, that she was 18 years old and had had a baby; (2) her manner of dress and the way she wore her hair and makeup; (3) of the "mature," "lady-like" way in which she acted; and (4) he overheard her tell a friend of his that she was 18.

Police Officer Laine testified that S.G. told appellant either before or after the assault that she was only 15 years old. Laine stated S.G. was uncertain when she told him her age.

Appellant was convicted of criminal sexual conduct in the first and third degree and was sentenced to the presumptive term of imprisonment of 43 months for criminal sexual conduct in the first degree.

Appellant petitioned for post-conviction relief raising numerous issues. By order dated December 9, 1985, appellant's petition was denied.

### ISSUES

1. Is the evidence sufficient to support appellant's convictions of criminal sexual conduct in the first and third degree?

2. Did the trial court err in excluding the evidence relating to S.G.'s prior sexual experience and the way she acted and projected herself in the community?

3. Was appellant denied a fair trial by the admission of *Spreigl* evidence of a sexual assault against his ex-wife?

4. Is appellant entitled to a new trial because of the prosecutor's comments during closing argument?

5. Was appellant denied a fair trial because of alleged errors at trial, erroneous jury instructions, and ineffective assistance of counsel?

6. Was appellant entitled to a downward departure from the presumptive sentence?

## ANALYSIS

1. Appellant claims there is insufficient evidence to support his convictions. In examining the claim of insufficiency of evidence, we must examine the evidence in the light most favorable to the verdict and assume the jury disbelieved any contradictory testimony. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). The weight and credibility of witnesses is within the province of the jury. *State v. Daniels,* 380 N.W.2d 777, 781 (Minn.1986).

Generally, the testimony of a complainant in a prosecution for sexual assault need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1984). However, in an individual case, the absence of corroboration may require a holding that the evidence is legally insufficient. *State v. Hesse,* 281 N.W.2d 491, 492 (Minn.1979); *State v. Ani,* 257 N.W.2d 699, 700 (Minn. 1977).

In this case, the evidence was sufficient to support the convictions. S.G. testified appellant forced her to have intercourse; she reported the assault the same evening it occurred.

Although S.G.'s initial statements to her mother and the police differed from her summary of events presented during the trial, the evaluation of her credibility falls within the domain of the jury. S.G. explained that the reason she misrepresented the circumstances surrounding the assault was because her parents did not approve of her being out alone in the evening, and

would not have approved of her visiting appellant's apartment.

The jury could have reasonably questioned appellant's credibility when he admitted he lied to the police about his whereabouts on the evening of the assault and falsely claimed he knew no young girl, and at trial conceded he had sexual intercourse with S.G. contrary to his previous claims.

Appellant's claim that there is insufficient evidence to prove he inflicted "personal injury" upon S.G., which is an element of first degree sexual conduct under Minn. Stat. § 609.342(e)(i), is without merit. As a result of the assault, S.G. experienced irritation in the vaginal area and pain in her lower stomach, and broke a thumbnail in attempting to prevent the assault. "Physical pain" is sufficient for establishing "personal injury." Minn.Stat. § 609.341, subd. 8 (1984); *see State v. Reinke,* 343 N.W.2d 660, 662 (Minn.1984); *State v. Bowser,* 307 N.W.2d 778, 779 (Minn.1981).

Appellant further alleges the evidence demonstrated he believed S.G. was at least 16 years of age, which is an affirmative defense to criminal sexual conduct in the third degree under Minn.Stat. § 609.344, subd. (b). The jury was in the best position to evaluate whether appellant proved by a preponderance of the evidence that he believed S.G. was 16 years of age or older. Although appellant presented some evidence in support of his claim, a review of the evidence in the light most favorable to the state indicates the jury could have found appellant failed to sustain his burden of proof on the affirmative defense.

There is sufficient evidence to support appellant's convictions of criminal sexual conduct in the first and third degree.

2. Appellant claims he was denied his constitutional right of confrontation and his right to a fair trial by the exclusion of evidence relating to S.G.'s prior sexual experience and the way she acted and projected herself in the community.[1]

---

1. The proffered evidence included:
   (1) statements made by S.G. to a friend that she had once had a baby, but gave it up for

adoption; that the two of them had once run away to Minneapolis and that S.G. wanted to

The trial court excluded all evidence relating to S.G.'s previous sexual experience finding it was barred by Minn.Stat. § 609.-347, subd. 3 (1984) and Minn.R.Evid. 404(c)(1)(A)(i) because there is no common scheme or plan. The court excluded other evidence relating to how S.G. represented herself as an adult in the community, finding that it was irrelevant because appellant had not been aware of these instances.

Although Minn.Stat. § 609.347, subd. 3 prohibits the admission of evidence concerning a complainant's previous sexual conduct except under limited circumstances, it has been established that, when evidence tends to establish a predisposition to fabricate a charge of rape, it "should be admitted unless the potential for unfair prejudice substantially outweighs its probative value." *State v. Caswell*, 320 N.W.2d 417, 419 (Minn.1982) (citing *United States v. Kasto*, 584 F.2d 268, 271 n. 2 (8th Cir. 1978)).

■ The evidence concerning S.G.'s previous sexual conduct did not fall within an exception under Minn.Stat. § 609.347, subd. 3. It did not establish a predisposition to fabricate the charges and the potential for unfair prejudice substantially outweighed its probative value. Appellant's counsel conceded S.G.'s previous sexual conduct did not fall within the exception identified in Minn.Stat. § 609.347, subd. 3.

■ The only evidence which could have potentially provided any type of support for a motive to fabricate the charges was the statement in the medical report that S.G. missed her menstrual period in December of 1983, a month before the assault. The trial court did not abuse its discretion in not admitting the statement. Its potential for unfair prejudice substantially outweighed its probative value.

■ The evidence concerning S.G.'s alleged false representations to others in the community about being an adult, made outside the presence of appellant, was not relevant to appellant's claim that *he* believed she was 16 or older. Appellant was allowed to testify about representations S.G. allegedly made in his presence and his reasons for believing she was 16 or older.

We hold the trial court did not abuse its discretion in denying the admission of the proffered evidence.

■ 3. Appellant claims he was denied his right to a fair trial by the admission of *Spreigl* evidence of a sexual assault against his ex-wife because his participation in the assault is not "clear and convincing" and its potential for prejudice far outweighed its probative value.

The *Spreigl* evidence in question involved appellant's ex-wife's testimony that he forced her to engage in sexual intercourse after he came to her house, uninvited, in September of 1983. The matter was reported to the police three or four weeks after the incident, the day after appellant accused her of neglecting their children. Appellant testified that his ex-wife invited him to the house, let him in when he arrived, and although she was initially uncomfortable with his being there, she later freely consented to sexual relations.

We hold the trial court did not clearly abuse its discretion in admitting appellant's ex-wife's testimony. *See State v. De Baere*, 356 N.W.2d 301, 305 (Minn.1984); *State v. Morrison*, 310 N.W.2d 135, 137 (Minn.1981). The probative value, relevancy and materiality of the sexual assault against appellant's ex-wife is clear. Both

become a prostitute to earn money and had previously worked as a prostitute in Bemidji;

(2) a statement in the medical report of the sexual assault examination that S.G. missed her menstrual period in December 1983, the month before the sexual assault;

(3) evidence that she had previously had sexual intercourse as late as December 1983;

(4) statements by individuals that S.G. had lied about being an adult, being older than 16

years of age, and being old enough to drink alcohol legally, and that she had been seen in bars in Superior, Wisconsin and drank beer and alcohol;

(5) a statement by a friend of appellant's that just prior to the sexual assault he had spent about two hours with S.G. and she "came on to him" to have sexual relations.

assaults have similarities indicating a common scheme or modus operandi. In both assaults, the victims were initially not threatened by appellant. However, after a short period of time, appellant overpowered the women and forcibly had sex with them. Both assaults occurred in Duluth and the sexual assault against appellant's ex-wife occurred less than four months prior to the assault against S.G. In both cases, appellant conceded he had sexual relations with the victims, but claimed the relations were consensual.

Although appellant claims there is not "clear and convincing" evidence he sexually assaulted his ex-wife because there is no corroboration of her story and she allegedly had a motive to fabricate, we cannot find the trial court clearly abused its discretion in concluding otherwise.

■ 4. Appellant contends he was denied a fair trial by improper comments during the prosecutor's closing argument.

During the lengthy closing argument, the prosecutor stated: (1) appellant treated S.G. like a piece of rubbish; (2) he stood before the jurors not only as a representative of the state, but as S.G.'s last representative in the courtroom; and (3) defense counsel's responsibility is to his client, but the prosecutor's responsibility is to the state and to seek justice. Some of the prosecutor's comments were improper, and we disapprove; however, we cannot hold, as a matter of law, that appellant is entitled to a new trial. *See State v. Stufflebean,* 329 N.W.2d 314, 318 (Minn.1983); *State v. Guevara,* 270 Minn. 356, 362, 133 N.W.2d 492, 496 (1965). We emphasize, however, that, while the prosecutor is entitled to be vigorous in final argument, the prosecutor's comments cannot deny a defendant a fair trial. *See State v. Streeter,* 377 N.W.2d 498 (Minn.Ct.App.1985). The comments here were borderline reversible error; given other circumstances, we would not hesitate to reverse.

Appellant also claims other prosecutor statements during closing argument denied appellant a fair trial. However, appellant failed to object to the statements or to seek specific cautionary instructions and has, therefore, forfeited his right to obtain review of these matters. *See State v. Gunn,* 299 N.W.2d 137, 138 (Minn.1980).

5. We have carefully examined appellant's claim that he was denied a fair trial because of errors at trial, erroneous jury instructions, and ineffective assistance of counsel. We find no merit in these contentions.

■ 6. Appellant claims he was entitled to a downward departure from the presumptive sentence because the offense was far less serious than the typical criminal sexual conduct in the first degree. The trial court has broad discretion in determining whether to depart from the sentencing guidelines and "it would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). The trial court's failure to depart from the presumptive sentence was not an abuse of discretion.

## DECISION

There is sufficient evidence to support appellant's convictions of criminal sexual conduct in the first and third degree. The trial court did not abuse its discretion in excluding evidence relating to the complainant's prior sexual experiences and the way she acted and projected herself in the community or in admitting the *Spreigl* evidence of a sexual assault against appellant's ex-wife. The prosecutor's comments during closing argument, although improper, do not entitle appellant to a new trial as a matter of law. Appellant's claim that he was denied a fair trial because of alleged errors at trial, erroneous jury instructions, and ineffective assistance of counsel is without merit. The trial court did not abuse its discretion in refusing to depart downward from the presumptive sentence.

Affirmed.