STATE of Minnesota, Respondent,

v.

Gary Alan COLEMAN, Appellant.

No. C6–87–1662.

Court of Appeals of Minnesota.

June 14, 1988.

Review Denied Aug. 11, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Paul Engh, Sp. Asst. State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a judgment of conviction for first and second degree criminal sexual conduct, Minn.Stat. §§ 609.342, subd. 1(a) and 609.343, subd. 1(a). Appellant was sentenced to consecutive 140–month and 21–month sentences. We affirm.

## FACTS

·Appellant Gary Coleman was charged with an incident of sexual abuse of both R.H., 9 years old, and N.H., 4 years old, occurring at the home of their mother, Jean H., on November 9, 1986. Coleman, a former boyfriend of Jean H., was visiting that night, along with his friend Mark DuBay, at Jean H.'s invitation. Also present was Rick Jazowski, a frequent babysitter of the children.

The adults drank and played cards in the upper level of the house. About 8:30 or 9:00 p.m., the girls went to bed in the lower level. Jean H. testified she later felt ill and went into the living room and lay on the couch. She testified Coleman followed her and kissed her. Coleman then followed her to her bedroom but no sex occurred and Coleman left.

Jazowski testified he saw Jean H. get up from the table and go into the living room, and Coleman follow her. He testified Coleman didn't return and he and DuBay talked for 45 minutes to an hour. They then got up to look for Coleman and found him lying in N.H.'s bed, facing the girl. Coleman, who appeared groggy, rose and went to Jean H.'s bedroom. Jazowski noticed his belt buckle was undone. The next morning Jazowski called Jean H. and told her she should ask her daughters whether anything had happened with Coleman.

Jean H. testified she immediately asked N.H., who would not respond, but did not ask her older daughter, R.H., because she had a girlfriend there. Later that day, however, R.H. volunteered that Coleman had touched N.H. N.H. later told her Coleman had touched her.

N.H. was taken to the hospital for a sexual assault exam. The examiner, Dr. Lukk, testified she observed redness around the vagina that was consistent with sexual assault, and consistent with penetration with a finger. Dr. Lukk testified an internal exam is not done on children that age. On cross-examination, she stated she could not say to a reasonable medical certainty there was penetration.

R.H. testified she was lying on the top bunk when Coleman came down the stairs, saying he had to use the bathroom. Coleman tried to touch her, attempting to pull her legs apart. She testified Coleman touched her private part over her clothes. She then saw him touch her sister, on the lower bunk. She testified the bathroom light was on and she could see Coleman touch N.H.'s private spot, under her clothes. This went on for about 10 minutes. N.H. indicated several times it hurt. Coleman left but came back later and started touching N.H. again. Mark and Rick then came down and found him there. R.H. testified Coleman's belt buckle was undone and that he had given her a ring to keep her from telling.

N.H. testified by videotaped examination. She testified she was sleeping in her bunk bed, in her pajamas. Coleman came in and touched her, putting his finger inside, and it hurt. Then he stopped it. Mark and Rick came to the room and told him they had to go. Coleman was pretending he was asleep.

Coleman testified he had oral sex with Jean H. in her bedroom and was interrupted by DuBay walking in and stating they had to leave. Coleman testified he then went downstairs, where the girls' bedroom was, to go to the bathroom. Coleman admitted going into the girls' bedroom, where he claimed the girls were "jumping around and talking" and he talked and roughhoused with them. He testified he got dizzy and laid down on N.H.'s lower bunk bed, where DuBay and Jazowski found him and woke him up.

Coleman was impeached by seven prior convictions. He had been convicted in 1974 of two counts of kidnapping, two counts of aggravated assault, and one count of unauthorized use of a motor vehicle. The court had ruled he could not be impeached with a 1974 sodomy conviction. The court allowed impeachment by two 1983 convictions, one for burglary and one for attempted theft. Coleman admitted to his prior record on direct examination. He also volunteered he had "gotten into a little trouble" and "served time" when he was married, in the 1960's.

Coleman denied any sexual contact with either child. He testified:

No, I didn't. I never touched them kids. As I said before, I've always been after grownup women. I've always—I've never had any young girls that I desired.

The trial court allowed the state to cross-examine Coleman on his 1967 burglary conviction because he had brought it up on direct. The court also ruled the state could ask Coleman about charges he had attempted sexual contact in 1974 with an 11-year-old girl, part of the same incident resulting in his other convictions. The court indicated Coleman had "opened the door" to this inquiry by stating he had never desired young girls. When Coleman was asked if he was trying to sexually assault an 11-year-old girl at the time, he denied it. He was then asked if he had left the home and returned later, the state

claiming this was a separate conduct from the first part of the 1974 incident. The court allowed this question over defense objection, and Coleman denied it.

The investigating officer testified to his interviews with both girls. On cross-examination, he testified Jean H. told him R.H. "tends to tell stories once in a while." On redirect, the prosecutor asked him whether he had "the impression she was telling you a story." Defense counsel objected, and the court ruled he could "comment on the witness' affect when she was giving him answers." The prosecutor then asked him "what was her affect * * * ?" The officer responded, after the question was repeated, "I felt she was being honest with me through the whole conversation."

Coleman presented the testimony of his housemate, Evelyn Taflinger, and his own testimony, that they found girl's panties in the bed DuBay was using in their house. Defense counsel argued to the jury the possibility Mark DuBay had sexually assaulted the girls. DuBay did not testify, apparently because he was unavailable, and the court granted the state's motion to preclude the defense from bringing out DuBay's prior sex offense.

## ISSUES

1. Did the trial court prejudicially err in allowing testimony on the truthfulness of one of the child victims?

2. Did the court prejudicially err in allowing the state to cross-examine appellant concerning an alleged prior attempted assault on a young girl, or a 20-year-old burglary conviction?

3. Was the evidence sufficient to sustain the convictions?

## ANALYSIS

### 1. Testimony as to truthfulness.

■ Coleman contends the trial court prejudicially erred in allowing Sgt. Hudson, the investigating officer, to testify R.H. was being honest with him in accusing Coleman. Coleman, however, "opened the door" to this opinion testimony by eliciting the statement of Jean H. that her daughter often told stories. *See State v. Myers*, 359 N.W.2d 604, 611–12 (Minn.1984). We conclude in any event that any error was not prejudicial. *See State v. Campa*, 390 N.W. 2d 333, 335 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 27, 1986).

Four factors govern a determination of prejudice caused by a comment on truthfulness of a witness: 1) whether an objection was made; 2) whether the opinion was elicited or volunteered; 3) whether the remark was of a passing nature or relied on or called to the jury's attention; and 4) whether the rest of the evidence of guilt was strong or overwhelming. *See State v. Campa*, 390 N.W.2d at 335.

Coleman objected to any questioning of Hudson as to the truthfulness of R.H. At a bench conference the court ruled Hudson could be asked about R.H.'s "affect." The prosecutor asked this very question, which does not seem to call for an opinion as to truthfulness. Thus, Hudson's opinion was largely volunteered. The opinion was given at the close of the state's case, but was very brief and was not argued to the jury. Finally, in concluding that any error was nonprejudicial, we note that the evidence of Coleman's guilt was very strong.

### 2. Impeachment of appellant.

■ Coleman contends the court prejudicially erred in allowing the state to cross-examine him on a 20-year-old prior conviction, and an incident of alleged attempted sexual abuse of an 11-year-old girl in 1974.

The first contention is without merit. Not only did Coleman refer to the conviction on direct examination, but the cross-examination which elicited the nature of the conviction was brief and the conviction (burglary), was greatly dissimilar to the present charge. Also, it was but one item in a lengthy recital of properly-admitted prior convictions.

The state contends Coleman's 1974 offenses were motivated by an attempt to sexually assault a minor. The court allowed cross-examination on this contention to rebut Coleman's testimony he had never

desired or pursued young girls. The questioning proceeded as follows:

> Q. Isn't it true that when you were convicted on these two kidnappings, and the two Aggravated Assaults and the Unauthorized Use of a Motor Vehicle, that what that was all about is that you were trying to sexually assault an 11–year-old girl named Diane?
>
> A. No, ma'am.
>
> Q. Well, sir, isn't it true that you left the home with these two women and then later returned?

[Conference at the bench and recess taken]

> Q. Mr. Coleman, where we left off is that you denied having had any sexual contact with an 11–year-old girl back in 1974?
>
> A. Yes, ma'am, I did.
>
> Q. Do you deny at a later point going back and trying to get that 11–year-old girl into the car with you?
>
> A. Yes, I do.

■ A general denial that the defendant has done a particular kind of act, going beyond a denial of the charged offense, does not put in issue his character as to that trait. *State v. Sharich*, 297 Minn. 19, 23, 209 N.W.2d 907, 911 (1973); *see also State v. Martin*, 256 N.W.2d 85, 86 (Minn. 1977) (defendant's denial he had used drugs did not place character in· issue; drug use not an element of the charged offense). Evidence of specific instances of misconduct by the defendant may be admitted "to contradict the testimony of the defendant or a defense witness." *State v. Fader*, 358 N.W.2d 42, 46 (Minn.1984). The court in *Fader* stated:

> If defendant had testified on direct that he had never touched any other children, then the evidence clearly would have been admissible to impeach or contradict that testimony.

*Id.* (evidence determined to be admissible independently as *Spreigl* evidence); *see also State v. Becker*, 351 N.W.2d 923, 927 (Minn.1984) (defendant's denial that she had sex with any of her children properly impeached by testimony of son not involved in charged offense).

■ However, even if this evidence was admissible under *Fader*, the prosecution had no proof. that the prior incident occurred, only a verified complaint (which is not in the record on appeal). The prosecutor's questioning, which tied the alleged assault attempt to Coleman's *convictions* on the other charges, implied far greater proof than actually existed. The prosecutor, moreover, did not stop upon receiving Coleman's denial. *See* Minn.R.Evid. 608(b) (specific instances of conduct, to attack credibility, not admissible unless provable by conviction of crime). The prosecutor asked a follow-up question, arguing to the court the 1974 incident was divisible into two parts, each evidencing desire or motive to assault the child. The prosecutor's questioning, however, concerned not Coleman's conduct but his singular alleged motive.

This court has stated:

> Prosecutors in sexual abuse cases may not deliberately persist in trying to inject into trial matters which they cannot introduce directly; they must abide by the highest behavior.

*State v. Hanson*, 382 N.W.2d 872, 875 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Apr. 11, 1986). The prosecution may not have had clear and convincing evidence of the 1974 attempted assault, and. did not give a *Spreigl* notice of this offense. Moreover, the admissibility of even properly-noticed *Spreigl* evidence rests in part on the state's need for the evidence, a need which does not appear here. *See State v. Billstrom*, 276 Minn. 174, 178, 149 N.W.2d 281, 284 (1967).

Despite our concern ·about the manner and extent of this cross-examination, we conclude it did not likely play a substantial role in the jury's verdict. *See State v. Crist*, 281 N.W.2d 657, 658 (Minn.1979). Both R.H. and N.H. positively identified Coleman, a former boyfriend of their mother's and someone R.H. had known for some years, as the person who abused them. Coleman admitted being in their bedroom and being found by DuBay and Jazowski

lying on N.H.'s bed. The medical testimony established that sexual abuse of N.H. had occurred. Although Coleman attempted to show DuBay or Jazowski had committed the abuse, his admission he was found in N.H.'s bed seriously damaged his theory that another committed the offenses.

### *3. Sufficiency of the evidence.*

As discussed above, the evidence that R.H. and N.H. were sexually abused, and that Coleman committed the abuse, was amply sufficient. The girls' testimony was positive and substantially unimpeached, and was corroborated by the medical evidence, Jazowski's testimony, and Coleman's admission that he was found in N.H.'s bed. Their statements to their mother and to police were largely consistent with their trial testimony.

Coleman contends there was insufficient evidence of penetration. However, N.H. testified there was penetration and Dr. Lukk testified the bruising was consistent with penetration. She could not say to a reasonable medical certainty there was penetration because internal exams are not customarily done on children N.H.'s age. Her testimony, however, was sufficient to corroborate that of N.H. that penetration occurred.

### DECISION

The trial court did not prejudicially err in allowing testimony on the truthfulness of R.H. The court did not abuse its discretion in allowing cross-examination on appellant's 1967 conviction. Questioning of appellant on the facts underlying the 1974 convictions was harmless error. The evidence was sufficient to sustain the convictions.

Affirmed.