**STATE of Minnesota, Respondent,**

v.

**Corky Joe MAURER, Appellant.**

**No. C3–91–1994.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Review Granted Oct. 20, 1992.

Hubert H. Humphrey, III, Atty. Gen., Margaret H. Chutich, Sp. Asst. Atty. Gen., St. Paul, Thomas J. Simmons, Renville County Atty., Olivia, for respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and KALITOWSKI and AMUNDSON, JJ.

## OPINION

PARKER, Judge.

This appeal is from a conviction for third-degree criminal sexual conduct. Minn.Stat. § 609.344, subd. 1(c) (1990). We reverse and remand for a new trial.

## FACTS

Appellant Maurer was convicted of third-degree criminal sexual conduct for an incident occurring at his mobile home in Renville County. The state alleged that Maurer, with whom the complainant, L.S., expected to get a ride home, raped her in the mobile home. Maurer and L.S. had been among a group of people who had spent the evening and early morning hours together, beginning with a limousine ride from Redwood Falls. Maurer claimed that the sexual act was consensual.

L.S. accepted a spur-of-the-moment invitation to the limousine ride. Inside the limousine were Corky Maurer, Doug Panitzke, Judy Sperl, and Sperl's sister, Lynn Holmstadt. The group drank beer while they rode in the limousine. There was testimony that Maurer became aggressive with Sperl, touching her on the breasts.

At the end of the limousine ride, the group drove to a party. L.S. arranged for a ride part of the way to her home; Maurer said he would give her a ride from his house the rest of the way. On the way to Maurer's house, they rode in a crowded pickup truck cab, with L.S. sitting on Maurer's lap.

At Maurer's mobile home, L.S. testified, she asked Maurer for a cigarette and went into the mobile home when he said he had some inside. She testified that they kissed on the couch for awhile, but that she told Maurer she did not want to go any further than kissing and resisted being undressed and the forcible sexual intercourse which followed.

L.S. testified that she called a cab from Maurer's house and told the cab driver what had happened to her. She went directly to Judy Sperl's apartment, where she reported that Maurer had raped her. On direct examination, Sperl testified as follows:

Q. Based upon your perceptions from what you saw that day, do you believe she was sincere in what she was telling you?

A. Yes.

A friend of Sperl testified that when L.S. came to Sperl's apartment she was hysterical. He was asked, over defense objection, whether L.S. "appear[ed] sincere" and responded, "Yes. I was convinced."

Police were summoned by Sperl and her friend. One officer was asked on direct

examination, "Based upon your contact with her and the report from Judy Sperl, did you believe that she had been raped?" A defense objection was sustained. The court, however, overruled a defense objection to the question, "Did [L.S.] seem sincere in what she told you that evening?" The officer responded, "Yes."

The second officer was asked, "Did you feel that when [L.S.] was talking to you, that she was sincere in what she was telling you?" The defense objection was overruled, and the officer answered, "I believe so."

The court ruled admissible a *Spreigl* episode of sexual assault in 1990. The trial court also treated as *Spreigl* evidence the testimony of Judy Sperl concerning Maurer's treatment of her in the limousine the night of the charged offense and allowed her to testify about the incident.

Maurer was convicted of third-degree criminal sexual conduct and sentenced to the presumptive sentence, i.e., 48 months in prison.

## ISSUES

1. Did the trial court abuse discretion in admitting *Spreigl* evidence?

2. Did the trial court err in admitting opinion testimony of the complainant's sincerity in saying she had been raped?

## DISCUSSION

### I

■ Maurer contends it was prejudicial error to admit the two *Spreigl* incidents, that involving Judy Sperl which occurred on the night of the offense and the incident with J.H. eight months earlier. The incident with Judy Sperl, however, which occurred only a few hours before the charged offense, was part of the immediate episode and need not have been analyzed as *Spreigl* evidence. *See generally* Minn. R.Crim.P. 7.02; *State v. Holden,* 414 N.W.2d 516, 520 (Minn.App.1987) (prior incidents of sexual abuse against child victims were part of same occurrence or episode), *pet. for rev. denied* (Minn. Jan. 15, 1988). That incident was directly relevant

to the charged offense and properly admitted.

■ The admission of *Spreigl* evidence rests within the sound discretion of the trial court. *State v. Rainer,* 411 N.W.2d 490, 497 (Minn.1987), *cert. denied,* — U.S. ——, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991). The trial court's ruling will not be reversed on appeal absent a clear showing of an abuse of discretion. *State v. De-Wald,* 464 N.W.2d 500, 503 (Minn.1991).

■ The J.H. incident, occurring only eight months before the charged offense, showed a common scheme or plan of sexual aggressiveness toward women who were dependent on Maurer for a ride home. *Cf. State v. DeBaere,* 356 N.W.2d 301, 304–05 (Minn.1984) (pattern of sexually aggressive behavior was admissible where consent was the defense). This court has affirmed the admission of *Spreigl* evidence of a charged offense when the victims in both cases were initially not threatened by the defendant but were later overpowered by him and forced to have sex with him. *Powe v. State,* 389 N.W.2d 215, 221 (Minn. App.1986), *pet. for rev. denied* (Minn. July 31, 1986). The incidents here were sufficiently similar that it was not a clear abuse of discretion to admit the *Spreigl* evidence.

### II

Maurer contends the trial court abused discretion in admitting opinion testimony of several witnesses concerning the sincerity of L.S.'s claim of rape. The state argues the testimony was admissible because it concerned the "sincerity" rather than the "truthfulness" of the complainant's report. However, we find this to be a semantic distinction without any difference in the meaning of the opinions elicited.

■ "Sincere" is defined as "[n]ot feigned or affected; true." *American Heritage Dictionary* 1208 (1980); *see also Webster's New Universal Unabridged Dictionary* 1693 (2d ed. 1983) ("without deceit, pretense, or hypocrisy; truthful"). A principal meaning of the word "truth" is "sincerity." *Webster's New Universal Una-*

*bridged Dictionary* 1964 (2d ed. 1983); *see also American Heritage Dictionary* 1377 (1980) (one meaning of "true" is "[s]incerely felt or expressed; unfeigned"). The terms "truthful" and "sincere," if not interchangeable, are so closely related that the questions allowed here were directed toward eliciting an opinion of the truthfulness of L.S.'s reports of the incident.

This court in *State v. Coleman*, 426 N.W.2d 889, 892 (Minn.App.1988), *pet. for rev. denied* (Minn. Aug. 11, 1988), implied that it was error to admit an investigating officer's testimony that an alleged victim of sexual abuse was being honest with him in accusing the defendant. In *Coleman* the trial court allowed the prosecutor to ask the officer what the child's "affect" was in speaking with him. *Id.* This question, apparently designed to elicit a description of the victim's appearance and emotional symptoms, was not necessarily objectionable. Moreover, the victim was a nine-year-old child, not an adult woman.

The term "affect," as used in psychology, is defined as "[a] feeling or emotion as distinguished from cognition, thought, or action." *American Heritage Dictionary* 21 (1980). Thus, it has a strictly subjective connotation distinct from objective standards of truth. However, "sincere" does not have this distinguishable connotation.

■ This court in *Coleman* applied the four-part harmless error standard from *State v. Campa*, 390 N.W.2d 333, 335 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 27, 1986). In this case, application of each of those four factors indicates it was error to elicit opinion testimony of truthfulness and that the error was prejudicial.

First, the defense objected when the questions were asked. Second, the "sincerity" opinions were elicited by the prosecutor, not merely volunteered in response to differently worded questions, as in *Campa* and *Coleman*. Third, the opinions of four different witnesses, made over defense objections, cannot be considered to be of a passing nature. Three of these opinions as to L.S.'s sincerity were argued in closing argument. Finally, the evidence of Maur-

er's guilt was not overwhelming. The state pointed out the weaknesses in its case in arguing the admissibility of *Spreigl* evidence. *See generally State v. Billstrom*, 276 Minn. 174, 178, 149 N.W.2d 281, 284 (1967).

■ The state argues that the defense "opened the door" to the opinion testimony by attacking L.S.'s credibility. However, the defense made no attempt to prove a character trait of L.S. by showing a reputation for lack of truthfulness or sincerity, or by opinion testimony. *See* Minn.R.Evid. 608(a). The general claim that L.S.'s testimony as to the charge of sexual assault was not credible did not "open the door" to lay *opinion* testimony concerning sincerity, which was not directed toward *character* for truthfulness.

We have reviewed appellant's pro se supplemental brief. This court cannot consider matters outside the record, nor can we ignore the standard of review of the sufficiency of the evidence. *See generally State v. Bias*, 419 N.W.2d 480, 484 (Minn. 1988).

### DECISION

The trial court did not abuse discretion in admitting *Spreigl* evidence. However, it was error to admit opinion testimony of complainant's truthfulness. Because we cannot conclude this error to have been harmless, we reverse and remand for a new trial.

Reversed and remanded.

KALITOWSKI, Judge, concurring in part, dissenting in part.

I agree the trial court did not abuse its discretion in admitting *Spreigl* evidence. However, I conclude the trial court's decision to allow questions concerning the sincerity of the complainant was not reversible error when viewed in the context of the testimony of the witnesses.

The intent of the prosecution in asking questions about sincerity was to elicit information concerning the perception of the witnesses regarding the physical and emotional condition of the complainant at the

time she reported the alleged assault. *See State v. Coleman*, 426 N.W.2d 889, 892 (Minn.App.1988) (question as to victim's "affect" did not call for opinion as to truthfulness), *pet. for rev. denied* (Minn. Aug. 11, 1988). Thus, although the form of the questions was arguably improper I believe the evidentiary rulings of the trial court were within its broad discretion, *State v. Kelly*, 435 N.W.2d 807, 813 (Minn.1989), and, if erroneous, constituted harmless error. *State v. Campa*, 390 N.W.2d 333, 335 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 27, 1986).