

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00482-CR

KURLEY JAMES JOHNSON                                           APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
## TRIAL COURT NO. 53,445-C

----------

## **MEMORANDUM OPINION**[1]

----------

Appellant Kurley James Johnson was charged by indictment with three counts of indecency with a child by contact. Each count alleged an offense against a different complainant. Appellant pled not guilty to each count. The jury found him guilty on each count and, as to each count, assessed punishment at imprisonment for life. The trial court sentenced him accordingly and ordered the

---

[1]*See* Tex. R. App. P. 47.4.

three life sentences to be served consecutively. Appellant brings two points on appeal, arguing that the evidence is insufficient to support each of his three convictions for indecency with a child and that the trial court reversibly erred by allowing an expert witness to testify that the complainants had not been coached. Because the evidence is sufficient to support the jury's verdict and because the trial court committed no reversible error, we affirm the trial court's judgment.

**Brief Summary of Facts**

The complainants are referred to by pseudonyms: Count 1—Pseudonym 120002A ("Avery"), Count 2—Pseudonym 120002C ("Lala"), and Count 3—Pseudonym 120002D ("Nikki").

On December 24, 2011, Appellant was at the home of his relative M.J. M.J.'s daughters Lala and Nikki were there with their friends Avery and Avery's sister, CC. Later that same day, Avery made an outcry to her mother, who told M.J. Avery, Lala, and Nikki (collectively "Complainants") said that Appellant had placed his hand on their genitals over their clothes. M.J. and his son were also in the house when those acts occurred.

About a week later, Complainants' mothers filed a police report listing Appellant as a suspect for indecency with a child by sexual contact. Officers took the reports, filled out a pseudonym sheet for each complainant, and forwarded the information to the Criminal Investigative Division ("CID"). Following CID procedure, the CID did not personally interview the children involved in the report but instead went to Patsy's House—a child advocacy center—which has forensic

2

interviewers trained to speak with children in these cases. Complainants were interviewed by Shannon May, a forensic interviewer for Patsy's House.

At trial, Avery testified that Appellant picked her up, placed her on his lap, and rubbed his hand over her genital area for "[a] few seconds" while they played a game of Monopoly. Appellant stopped when Avery asked to use the bathroom. Lala testified that on the same day, Appellant touched her "private area" as she was playing a computer game in the living room. She testified that he moved his hand while he touched her but said that she was too embarrassed to explain how he moved it. Lala said that Appellant stopped when she moved to another couch. Although Nikki was unable to testify whether she was lying down, standing up, or sitting down when the incident occurred, she also testified that Appellant placed his hand on her genitals over her clothes, but she said that he kept his hand still.

May also testified at trial. May had completed training in conducting forensic interviews with children who had allegedly been sexually molested. She had also completed a five-block training course through the State of Texas and additional national forensic interview training.

At trial, May explained that her interview process was a semi-structured narrative process; some parts of the interviews were therefore the same with all the children. She testified,

> I want to make sure that they understand the difference in truth and lie. I want to make sure that they're kind of developmentally on target so I'm asking questions that they understand. And then I'm

3

just trying to ask them in a way that's free narrative, so from their own recall, they can put words to their own story.

All four children were interviewed, but CC did not describe a completed offense of indecency with a child during May's interview.

The State asked May if there was "anything else significant about the interviews and the way the children answered their questions." May testified that "[t]here was nothing that [the children] stated that would make [her], based on [her] experience, think that there was any coaching." Appellant objected to May's statement, asserting that the statement was intended to "bolster the credibility of the witness." The trial court overruled Appellant's objection.

**Sufficiency of the Evidence**

In his first point, Appellant argues that the evidence of intent to arouse or gratify is insufficient to support the jury's verdict. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[3] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[8] In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[8]*Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."[9]

Section 21.11 of the penal code provides in pertinent part,

(a)    A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:

(1)    engages in sexual contact with the child or causes the child to engage in sexual contact . . . .

. . . .

(c)    In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1)    any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child . . . [10]

It is well established that intent may be inferred from an accused's behavior and words as well as from the surrounding circumstances.[11]  Avery, who was eleven, testified that she went into the kitchen to the table where Appellant and the other children were playing Monopoly.  Appellant put her in his lap, put his hand "at" her "front private" over her clothes, and moved his hand up and down. Avery did not testify that any adult other than Appellant was in the room.  There is

---

[9]*Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

[10]Tex. Penal Code Ann. §21.11(a)(1) (West 2011).

[11]*McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd); *see Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

6

no evidence that Appellant said anything significant to the determination of intent, but he stopped only when Avery got up and walked away. Lala testified that he did essentially the same thing to her on that same day and stopped when she moved away from him. Although Nikki was unable to provide detail, she testified that Appellant touched her genitals through her clothing with his hand.

Avery's sister CC testified that Appellant rubbed her right hip and that when Avery was sitting in his lap, although CC could not see his hand moving, she saw his left shoulder moving.

Thus, the evidence shows that Appellant touched and rubbed the genitals of two of the complainants and touched the genitals of the third complainant. He rubbed the hip of a fourth girl, who testified that she saw his arm moving while Avery was sitting in Appellant's lap. The evidence that Appellant engaged in sexual contact with each of the three girls on the same day suggests that the contact was not accidental or inadvertent. Nothing in the context of the fondling suggests that a nonsexual explanation for the contact exists. Additionally, the testimony suggests that Appellant was trying to hide his actions by engaging in the touching below the level of the table or when the respective child was alone. Considering the record as a whole, and employing the appropriate standard of review, we hold that the evidence is sufficient to support the jury's determination that Appellant fondled each of the three girls with intent to arouse or gratify his sexual desire. We overrule Appellant's first issue.

**Opinion Testimony of Interviewer**

In his second point, Appellant argues that the trial court reversibly erred by allowing May to testify that she saw no evidence of coaching when she interviewed the children because the opinion constituted improper bolstering of the children's testimony. Technically, May did not testify that in her opinion they had not been coached. Rather, she testified that "[t]here was nothing that the[ children] stated that would make [her], based on [her] experience, think that there was any coaching." That is, she said that she saw no evidence of coaching, which is permissible.[12] We see no expression of May's opinion of the truthfulness of the children.[13] We therefore hold that the trial court did not abuse its discretion by admitting May's testimony. But even if, as Appellant argues, May's objected-to testimony was an expression of her opinion of the truthfulness of the children, and therefore inadmissible,[14] a conclusion we do not reach, Appellant suffered no harm.[15] Trial counsel's skillful cross-examination of May revealed that, although she did not suspect coaching, she could not know for a certainty, or even a

---

[12]*See Schutz v. State*, 957 S.W.2d 52, 70, 73 (Tex. Crim. App. 1997); *Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.).

[13]*See Schutz*, 957 S.W.2d at 73; *Cantu*, 366 S.W.3d at 777.

[14]*See Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993).

[15]*See* Tex. R. App. P. 44.2(b).

8

probability, that the children's testimony had not been influenced.  We overrule Appellant's second point.

**Conclusion**

Having overruled Appellant's two points, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 16, 2015